**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS<br>ex. rel. JAMES W. GLASGOW,<br><br>Plaintiff,<br><br>*vs*.<br><br>2022 FORD BRONCO, VIN ENDING 1573<br>2021 FORD BRONCO, VIN ENDING 6084<br>2021 AUDI RS Q8, VIN ENDING 2969<br>2022 FORD F-250, VIN ENDING 7351<br>U.S. CURRENCY $1,257.00<br>FIDELITY INVEST. ACCT. ENDING #099245<br>FIDELITY INVEST. ACCT. ENDING 074010<br>FIDELITY INVEST. ACCT. ENDING 076532<br><br>JEFFERY REGNIER AND GRETA KERANEN,<br>KEE CONSTRUCTION, LLC., KEE FIREARMS<br>AND TRAINING, LLC<br><br>Defendant/Claimants. | ) | **NO. 26 CV 10295**<br><br>Hon. Sara Lee Ellis |

**<u>RESPONSE TO MOTION OF THE UNITED STATES TO DISMISS</u>**

Now Comes the Claimants, **JEFFERY REGNIER** and **GRETA KERANEN**, by and through their attorneys and for their present *Response* states as follows:

## SUMMARY OF RESPONSE

Indulging a presumption of regularity, authorized officials of the Department of Homeland Security (DHS) submitted the United States and its agents to the jurisdiction and laws of the State of Illinois. *See e.g.* 6 CFR § 5.44 (Testimony and production of documents prohibited unless approved by appropriate Department officials.) However, if individual field agents acted outside of these regulations and

did not enjoy actual authority to submit the United States or its agents or agencies to the jurisdiction of the State of Illinois, the United States is correct and its present motion is well taken.

**OPERATIVE FACTS**

The Claimants owned and operated several businesses, including a federally licensed firearm dealership. Alarm bells went off during the COVID-19 pandemic when the Claimants hired the Brink's Company (NYSE:BCO) to send an armored car to ferry accumulated cash from their firearm business to their bank. (Ex. A, Bates # 3-24) A sweeping federal investigation ensued involving the Secret Service, ATF, and other federal agencies. (Ex. A, Bates # 3-24) For reasons beyond the knowledge of the Claimants, agents from the U.S. Secret Service and other agencies solicited state court prosecutors to pursue the Claimants under Illinois' forfeiture laws. (Ex. A, Bates # 3-24; *see also* Exs. B & C) Whether a formal federal / state cooperation agreement was executed is something also beyond the Claimants' knowledge. Federal agents sought, obtained, and executed a seizure warrant issued by a state court judge authorizing the seizure of Claimants' assets, including various investment and stock brokerage accounts. (Ex. B, Bates # 24 - 60) In fact, federal agents are still in possession of some of the Claimants' property. (Ex. I, Bates # 182-185)

For reasons that are not explicable, the federal agents and local prosecutors convinced the brokerage house that the operative seizure warrant also authorized the immediate sale and liquidation of all stocks and securities held within these accounts.

(Ex. D, Bates # 115-119) After the forfeiture case pended for more than 2 years, the Claimants filed a written trial demand which resulted in a trial date being set. Whether the Claimants were actually money launderers who contracted with a publicly traded armored car corporation (NYSE:BCO) to pick-up and ferry cash to a federally insured bank for counting and deposit, is a trial which the Claimants thought should occur.

Accordingly, the Claimants objected to all continuances and, when unsuccessful in persuading the trial judge to grant them more time, prosecutors sought assistance from the Illinois Supreme Court. (Ex. J, Bates 187-189) The Illinois Supreme Court denied prosecutors' request for an emergency continuance and days later denied their request for entry of a supervisory order, and also denied their petition for a writ of mandamus. (Ex. J, Bates 187-189) The Illinois Supreme Court having denied all relief, the trial judge also entertained no further requests for a continuance and ultimately entered judgment in favor of the Claimants. Whether the state was unable to present its case because the DOJ had reviewed and turned-down the matter, resulting in field agents being unable (or unwilling) to obtain supervisory permission (*See e.g.* 6 CFR § 5.44) is something beyond the ken of the Claimants – though they harbor suspicions.

When the case against them failed the Claimants sought the return of their property, including their seized stocks, bonds, and annuities. (Ex. E, Bates # 120-149) The Claimants urged that the prejudgment sale of any property, securities or not, was done on a prejudgment and *ex party* basis and thus contrary to law (720 ILCS

5/29B-7(b)) and that those who so acted did so at their own peril and risk. In sum, the Claimants urged that just like their cars and other property which was mostly returned, their stock portfolio should also be reassembled and returned to them as it existed immediately prior to seizure. On this point the Claimants noted that the U.S. Department of Justice publishes an *Asset Forfeiture Policy Manual* which explicitly provides how brokerage accounts are to be delt with, *i.e.* frozen in place until a final order enters or interlocutory sale is approved.[1] *See also United States v. Approximately 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009)(interlocutory sale may be appropriate where seized items are perishable, the costs of maintenance is prohibitive, or other good cause)).

Believing they had been wronged the Claimants sought to avail themselves of state law. Much like the statutory powers which Congress has granted its judiciary (*see e.g.* 28 U.S. Code § 2465), the Illinois General Assembly has granted its judiciary authority over seized property (720 ILCS 5/29B-11) the right to order seized property returned (720 ILCS 5/29B-25(a)) and statutory remedial powers – without the need for a second round of litigation. 720 ILCS 5/29B-25. A hearing was scheduled for April 29, 2026, with the state court judge ordering that notice be provided to all potentially liable parties. (Ex. F, Bates # 150-156)

On April 6, 2026, by certified and U.S. mail, notice was sent to Fidelity Investments, the Illinois State Police, the U.S. Secret Service, the U.S. Attorney for

[1] https://www.justice.gov/criminal/criminal-afmls/file/839521/dl?inline= (Asset Forfeiture Policy Manual  4-11)

the Northern District of Illinois, and the U.S. Attorney General. (Ex. F, Bates # 150-156) The Illinois Attorney General appeared for the Illinois State Police (Ex. G). The State Police appeared because Illinois law makes the agency holding seized property responsible for all damages (720 ILCS 5/29B-25) and it was the Illinois State Police who eventually held the liquidated funds, which totaled more than four million ($4,000,000) dollars.

Fidelity Investments also appeared by counsel and all sides briefed their respective positions and, after the matter was continued several times, a hearing was held on July 22, 2026. (Ex. G) The only party who absented themselves was the United States. On August 12, 2026, the Honorable Jennifer Lynch entered a court order holding local prosecutors and the U.S. Secret Service responsible for some resulting losses, but did not command them to fully reconstitute the Claimants stock portfolio as it stood on the date of seizure. (Ex. H, Bates 178-181) Further hearings were set in state court for October 21, 2026. (Ex. H, Bates 181)

The Claimants had planned to request reconsideration prior to the next scheduled court date. The Claimants planned to urge that a return of seized property, whether a car, a Rolex watch, or invested securities is *not* an award of damages. The securities were not keepsakes and could easily be reassembled and returned to the Claimants. In fact, judges order property returned all the time without the need for a second round of litigation. Accordingly, the Claimants were going to seek reconsideration and possibly pursue an appeal, depending upon the terms of the final

judgment entered. Having received an unfavorable ruling in state court, however, the United States sought removal and dismissal of the United States and its agencies.

## I. NOT EVERY FEDERAL EMPLOYEE CAN SUBMIT THE UNITED STATES OR ITS EMPLOYEES TO STATE COURT JURISDICTION.

The United States and its individual states are sovereigns who operate their own respective court systems, including Illinois. This does not mean that every federal employee can submit agents or agencies of the United States to state court jurisdiction. Whether an authorized submission to the jurisdiction of the State of Illinois has occurred, the Claimants suggest, is the question at bar.

The United States is correct that, absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. *Loeffler v. Frank*, 486 U. S. 549, 554 (1988); *Federal Housing Administration v. Burr*, 309 U. S. 242, 244 (1940). Sovereign immunity is jurisdictional in nature. Indeed, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U. S. 584, 586 (1941). *See also United States v. Mitchell*, 463 U. S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"). On this point it is worth note that Congress has passed the Civil Asset Forfeiture Reform Act (CAFRA), 28 U.S. Code § 2465, which explicitly waives federal sovereign immunity and grants federal judges the authority to order seized property returned, and to award interest and attorney fees without a need for a second round of litigation. Congress has further allowed suit for improper seizures “[F]or the

purpose of forfeiture under any provision of Federal law..” 28 U.S. Code § 2680(c)(1). In sum, forfeiture and seizure abuses are something Congress has explicitly addressed.

The foregoing is important because the State of Illinois (and its judiciary) were peaceably minding their own business when federal agents walked into a state courthouse in order to invoke the jurisdiction of the State of Illinois. As the U.S. Supreme Court has long recognized, the states are sovereigns as well. *Gregory v. Ashcroft*, 501 U.S. 452, 457, 111 S.Ct. 2395, 115 L.Ed.2d 410] (1991); “[B]oth the Federal Government and the States wield sovereign powers, and that is why our system of government is said to be one of ‘dual sovereignty’; *see also Gamble v. United States*, 139 S. Ct. 1960 (2019)(dual sovereignty allows prosecution in both federal and state court without violating double jeopardy).

Because the United States is also a sovereign, its employees cannot be held in contempt in state court for refusing to produce documents or testify when following department regulations that centralize that disclosure authority in the agency head. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). In *St. Vincent Med. Grp., Inc. v. U.S. Dep't of Justice*, 71 F.4th 1073 (7th Cir. 2023), the Seventh Circuit noted that federal courts enjoy little discretion to force the federal government to obey state court subpoenas or requests. For this reason, an F.B.I. agent who is duly authorized by his or her superiors may appear and testify in a state court bank robbery trial, for example, or the United States may decline to honor a state court subpoena. If *Touhy*

permission is obtained, however, the agent is subject to the subpoena powers of the State of Illinois and the powers of its judiciary.

For the Department of Homeland Security its housekeeping regulations reside at 6 CFR Part 5 - Subpart C - Disclosure of Information in Litigation (6 CFR § 5.41 - 6 CFR § 5.49). What these regulations make plain is that there is a chain-of-command and that the only authority which field agents enjoy is to disclose "official information" to their state counterparts. 6 CFR § 5.41(i). To testify in court or submit themselves to state court jurisdiction agents need explicit permission and clearance from authorized federal officials. 6 CFR § 5.46 Further, providing expert testimony is flatly prohibited except when additional clearances are obtained. *See* 6 CFR § 5.49; *see also* 5 CFR § 2635.805. Thus, agents who present themselves as money laundering experts, financial experts, or proffer expert opinions or factual testimony in state court have authorizations to seek and obtain.

In the case at bar, federal agents presented themselves before state court judges, testified in support of state court warrants, executed state court seizure warrants, and took into their custody (and still have in their possession) property of the Claimants which was seized pursuant to state court process. Whether statutorily authorized DHS supervisors approved the foregoing is the seminal issue at bar.

## II. THE STATE OF ILLINOIS IS A SOVEREIGN AND THE UNITED STATES SUBMITTED ITSELF TO THE JURISDICTION THEREOF.

As noted *supra*, both the United States and the State of Illinois are sovereigns and both Congress and the Illinois General Assembly have armed their respective judiciaries with remedial tools to right forfeiture wrongs.

Congress has passed the Civil Asset Forfeiture Reform Act (CAFRA), 28 U.S. Code § 2465, which explicitly waives federal sovereign immunity and grants federal judges the authority to order seized property returned, and to award interest and attorney fees without a need for a second round of litigation. Illinois likewise imposes duties on law enforcement holding seized property (720 ILCS 5/29B-7) and only allows the sale of seized property when such property is ordered forfeited. 720 ILCS 5/29B-7(b). Illinois also vests its judiciary with authority over seized property (720 ILCS 5/29B-11) including the right to order seized property returned and the right to assess damages. 720 ILCS 5/29B-25. All of the foregoing was certainly within the knowledge of statutorily authorized DHS superiors when making *Touhy* decisions.

This is important because in *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002), the Supreme Court held that by voluntarily invoking the jurisdiction of the federal court, the State of Georgia had waived its immunity to suit. In *Lapides*, the plaintiff was an employee of the Georgia state university system who brought a lawsuit in a Georgia state court. Included in the plaintiff's state tort allegations were also allegations under federal the Civil Rights Act of 1871, which the defendants seized upon for removal purposes. Once removed to district court the defendants urged immunity under the 11th Amendment, which the Supreme Court ultimately rejected.

Of the many issues raised on this point was whether Georga's attorney general, by removal, enjoyed the authority to waive Georgia's immunity. The Supreme Court addressed this issue by differentiating between voluntary and involuntary invocation. *Id* at 622. The Attorney General certainly had authority over litigation, and thus removal decisions, and the Supreme Court noted that voluntary invocations cannot be used for strategic advantage. In sum, a sovereign cannot voluntarily seek remedy or invoke the jurisdiction of another sovereign, only to claim immunity from the very jurisdiction it elected to invoke.

In the case at bar, the United States cannot fare any better. As noted above, the United States has its own court system and within that court system Congress has waived sovereign immunity, and has empowered its own judiciary to exercise authority over seized property, and has also vested judges with certain powers to right forfeiture wrongs. (28 U.S. Code § 2465) The United States and its agents were certainly free to litigate in federal court and to solicit warrants from its own judges. Instead, supervisory DHS officials elected to dispatch federal agents to state court to seek state court remedy. Local police and prosecutors would have no way to know about federal activities, especially not those of the ***Secret*** Service, without such authorized dispatch.

Presuming that authorized DHS officials so approved, it appears that the United States dispatched its agents to state court, authorized them to subject themselves to state court jurisdiction, and authorized them to seek and execute state court warrants. This is important because, in the State of Illinois, judicial warrants

come with judicial supervision and the United States cannot voluntarily submit its agents and agencies to state court process and then claim immunity from the very process it explicitly and voluntarily invoked.

In short, the Claimants are entitled to have their property returned. If a federal agent or local cop decides to smash a Rolex, or participates in the sale of securities before a final ruling enters, an order of return is not an "*award of damages*". It's just a command to return what a judicial warrant allowed law enforcement to seize and hold pending a final ruling. No federal agent, local cop, or prosecutor can render a court powerless by swinging a hammer or making a sale.

## **CONCLUSION**

Did authorized officials of the United States consent to state court jurisdiction over its agents and agencies? Neither the Claimants nor a state court judge have access to federal records and thus cannot answer the query, but a presumption of regularity supports that DHS officials with actual statutory authority dispatched agents to state court in accord with applicable federal regulations. Accordingly, the United States cannot now complain about state court authority, action, or remedy – as the United States elected to submit itself through its authorized agents.

If field agents appeared, gave testimony, and executed state court warrants as unofficial 'friends' of local law enforcement, the Claimants concede that the United States' present motion is well taken and no judgment against the United States or

any agency thereof may stand – within the forfeiture action itself.[2] If such is the case, the remainder of the case should be remanded to state court as none of the other players enjoy federal immunity. Whether prudence dictates that state court judges should **first** diligently question federal field agents about their actual authority before accepting any testimony, or signing any warrants, certainly seems to be the case, but is ultimately beyond the question at bar.

Whether *Touhy* clearances were obtained is something on which the representation of an Assistant United States Attorney should suffice.

**WHEREFORE**, the Claimants urge that the United States has voluntarily submitted itself to the jurisdiction of the State of Illinois and cannot now complain about the application of state law.

By:____*/s/ Frank Andreano*_________
One of Claimants' attorneys

Andreano Law PC
Attorney for JEFFERY REGNIER and GRETA KERANEN
Frank P. Andreano ARDC #06202756
58 N. Chicago Street, Ste. 509
Joliet, Illinois 60432
815-242-2000
frank@iltrials.com

[2] Whether the Claimants may file a separate suit is not a question presently at bar.

## CERTIFICATE OF SERVICE

I, Frank P. Andreano, an attorney on oath and pursuant to penalty of perjury, as provided under 28 U.S. Code § 1746, and being located within the bounds of the United States, state that on this 14th day of September, 2026, I served the attached objection upon all parties who have appeared herein by the ECF filing service. I further state that I served the following persons by email:

Christopher Hotaling
NIXON PEABODY LLP
70 W. Madison St. Ste. 5200
Chicago, IL 60602
chotaling@nixonpeabody.com

D. Foulk
Assistant States Attorney
Will County
57 N. Ottawa Street
Joliet, Il 60432
dfoulk@willcountysao.gov

Maxwell S. Busby
Assistant Attorney General
Government Representation Division
Office of the Attorney General
115 S. LaSalle Street
Chicago, IL 60603
Maxwell.Busby@ilag.gov

By:____/s/ Frank Andreano_________

One of Claimants' attorneys

Andreano Law PC
Attorney for JEFFERY REGNIER and GRETA KERANEN
Frank P. Andreano ARDC #06202756
58 N. Chicago Street, Ste. 509
Joliet, Illinois 60432
815-242-2000
frank@iltrials.com